NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

ARTHUR BOSSERT,

   Plaintiff,

  v.

TROPICANA PRODUCTS, INC. et al.,

   Defendants.

Civil Action No. 11-5159 (SRC)

**OPINION**

---

**CHESLER, U.S.D.J.**

  This matter comes before the Court on three motions for summary judgment, pursuant to FED. R. CIV. P. 56: 1) the motion by Defendant Milk Drivers and Dairy Employees Local No. 584, I.B.T. (the "Union"); 2) the motion by Defendant Tropicana, Inc. ("Tropicana"); and 3) the motion by Plaintiff Arthur Bossert ("Bossert"). For the reasons set forth below, Defendants' motions will be granted, and Plaintiff's motion will be denied.

**BACKGROUND**

  This case arises out of an employment dispute. Plaintiff Arthur Bossert was a Union member employed by Tropicana when he was fired in 2010. The Union grieved the discharge and demanded arbitration. The parties dispute whether Union attorney John Driscoll ("Driscoll") entered into a valid and binding settlement agreement[1] with Tropicana prior to informing the

---

[1] For convenience, the Court refers to this as the "Driscoll Settlement," which is not intended to convey any determination as to whether or not the parties entered into a valid and binding settlement agreement.

arbitrator that the matter had been resolved. After the Union membership learned of the terms of the Driscoll Settlement, a group of Union members submitted a petition to the Executive Board opposing it. The Union Executive Board voted to reject the Driscoll Settlement. The Union then sought to reopen Plaintiff's arbitration case, which Tropicana opposed, based on the Driscoll Settlement. The Union and Tropicana submitted to arbitration the question of whether the grievance was arbitrable or whether the Driscoll Settlement precluded arbitration. The arbitrator ruled that the parties had entered into a binding settlement agreement and that the grievance was not arbitrable. The Union has not acted to enforce the Driscoll Settlement or the arbitrator's decision that the Driscoll Settlement was a valid and binding agreement.

Plaintiff filed a Complaint, now amended, against the Union and Tropicana, which asserts five counts: 1) breach of the settlement agreement; 2) breach of the duty of fair representation; 3) civil conspiracy; 4) employment discrimination by reason of age in violation of New Jersey's Law Against Discrimination ("NJLAD"); and 5) confirmation of the arbitration award. On July 16, 2012, the parties stipulated to the dismissal of the Fourth Count. All parties have now moved for summary judgment.

## LEGAL STANDARD

I.  **Summary Judgment**

Summary judgment is appropriate under FED. R. CIV. P. 56(a) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of

the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "A nonmoving party has created a genuine

issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

## DISCUSSION

I.  **Defendants' motions for summary judgment**

Defendants first argue that Plaintiff's claim for breach of the settlement agreement is a hybrid claim under § 301 of the Labor Management Relations Act ("LMRA"): "A 'hybrid' section 301 action is one in which a union member sues his or her employer for breaching its contractual obligations under the collective bargaining agreement and the union for breaching its duty of fair representation." Beidleman v. Stroh Brewery Co., 182 F.3d 225, 236 (3d Cir. 1999). Defendants argue that this state law claim is thus preempted by federal law, the LMRA.

In opposition, Plaintiff argues that his state law claims are not preempted by the LMRA, citing Caterpillar, Inc. v. Williams, 482 U.S. 386, 396 (1987): "a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights independent of that agreement, including state-law contract rights, so long as the contract relied upon is not a collective-bargaining agreement." Plaintiff contends that his claim for breach of contract asserts legal rights independent of the collective bargaining agreement.

4

Plaintiff fails to persuade for a number of reasons, but the first problem is that Plaintiff has given this Court no basis to conclude that he is asserting legal rights that are independent of the collective bargaining agreement.  Plaintiff's opposition brief offers only conclusory assertions of independence.  It refers to a settlement agreement, but does not specifically identify that agreement or its contents.  Plaintiff thus offers no factual foundation for his argument.  Nor does the Amended Complaint specifically identify the alleged settlement agreement.  It is clear from the Amended Complaint, however, that the alleged settlement agreement involved the Union, Tropicana, Plaintiff, disciplinary charges, and arbitration proceedings in connection with Plaintiff's grievance.  From these alleged facts, this Court does not perceive how Plaintiff here seeks to assert legal rights that are independent of the collective bargaining agreement.  Rather, it appears that Plaintiff's legal rights under the alleged settlement agreement are quite intertwined with the collective bargaining agreement.[2]

Plaintiff argues in the abstract that the (undefined) settlement agreement is "capable of standing on its own without 'looking to' the CBA."  (Pl.'s Opp. Br. 4.)  It is not clear what this test is or what authority supports it.  Nonetheless, this Court disagrees that this Court need not look to the collective bargaining agreement to rule on Plaintiff's contract claim,[3] which is truly

---

[2] As a point of comparison, in <u>Caterpillar</u>, the Supreme Court characterized an employment agreement with a managerial employee, not part of the bargaining unit, as not intertwined with the collective bargaining agreement.  482 U.S. at 395 n.9.  Here, Plaintiff is a member of the bargaining unit.  At the core of the present dispute are dispute resolution procedures specified by the collective bargaining agreement.  If Plaintiff returned to work, he would work as a member of the bargaining unit under the collective bargaining agreement.

[3] The Amended Complaint points to the arbitrator's ruling that the Driscoll Settlement was valid and asserts: "Nothwithstanding the Award, Tropicana and Local 584 have failed and refused to honor the terms of the settlement agreement." (Am. Compl. ¶ 34.)  In the context of this claim, the arbitrator's award is relevant because of his role in the dispute resolution process

inextricably intertwined with the grievance resolution process set forth in the collective bargaining agreement.[4]  As Tropicana observes, the Driscoll Settlement had terms which eliminated two positions from the bargaining unit.  How could Plaintiff's rights under this agreement be independent of the collective bargaining agreement which defines the bargaining unit?

Plaintiff has not persuaded this Court that he seeks to assert independent rights.  Plaintiff's state law claims are preempted by the LMRA.  Defendants' motions for summary judgment on the First Count, for breach of the settlement agreement, will be granted.

Defendants also contend that the Third Count, for civil conspiracy, is a state law claim preempted by the LMRA.  Although Plaintiff's opposition brief asserts that the Third Count is not preempted, it offers no analysis or argument to support the position.  The Third Count asserts that Defendants conspired to deprive Plaintiff of his "right to have his grievance heard."  (Am. Compl. ¶ 42.)  This indicates dependence on the collective bargaining agreement, which establishes procedures for dealing with grievances, not independence.  Plaintiff has failed to defeat Defendants' motions for summary judgment on the Third Count.  Defendants' motions for summary judgment on the Third Count, for civil conspiracy, will be granted.

Defendants both move for summary judgment on the Second Count, for breach of the duty of fair representation.  The parties agree that this claim is governed by the Supreme Court's

---

established by the collective bargaining agreement.

[4] Furthermore, "the pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 23 (1983).  The First Count complains of a violation of a contract between an employer and a labor organization.

decision in Vaca v. Sipes, 386 U.S. 171, 190 (1967), and its progeny: "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith."  Plaintiff does not argue that the Union discriminated against him, but that its conduct was in bad faith and arbitrary.

  The key facts here are not in dispute.  Tropicana discharged Plaintiff, and the Union agreed to grieve the discharge before an arbitrator.  Prior to the hearing, the Union's attorney, Driscoll, discussed settling the grievance with Tropicana, the Union, and Plaintiff.  The undisputed evidence is that Driscoll worked out a settlement agreement that was accepted by Tropicana and by Plaintiff, and that the Union leadership had authorized Driscoll to settle the dispute.  It is also undisputed that this settlement restored Plaintiff's employment, but eliminated the positions of Groundman and Engineer from the bargaining unit.  Driscoll and the attorney for Tropicana agreed that the matter had been settled, and agreed to inform the arbitrator that the matter was resolved, and to cancel the arbitration hearing. When other Union members learned of the terms of the settlement, a petition protesting the settlement was circulated and presented to the Union leadership.  The petition objected to the terms of the Driscoll Settlement which eliminated the Groundman and Engineer positions from the bargaining unit.  The Union Executive Board subsequently voted unanimously to reject the settlement agreement.  Driscoll then asked the arbitrator to reopen the grievance and to set a new hearing date.  Tropicana objected to this request, contending that the dispute was not arbitrable because it had been settled.  The parties appeared before the arbitrator, who agreed with Tropicana and ruled that the dispute was not arbitrable because it had been settled.  The Union has not acted to enforce the settlement agreement or the arbitration award.  Plaintiff never got his job with Tropicana back.

Again, the parties do not dispute the key facts. They dispute not a factual matter, but a legal conclusion: was there a valid and binding settlement agreement? This Court need not decide this issue in order to rule on the question of whether the Union breached its duty of fair representation. No material facts as to the Union's conduct are in dispute. The issue before this Court is whether the Union breached its duty of fair representation by authorizing its agent to settle a dispute and then rejecting the settlement he worked out, refusing to enforce both that settlement and the subsequent arbitration award which found that the parties had entered into a valid settlement agreement.

Plaintiff contends that the Union's conduct breached the duty of fair representation because it was both in bad faith and arbitrary. This Court has no difficulty arriving at the conclusion that, from an ordinary moral standpoint, the Union behaved badly and unfairly to Plaintiff. Indeed, it appears that the Union and its attorney were, to put it charitably, totally inept in handling Plaintiff's grievance. Unfortunately for Plaintiff, however, this appears to be a case in which the law gives the Union the discretion to resolve disputes in ways that benefit the collective rather than an individual member. In that context, the Union's decision appears to have been a rational decision which benefitted the collective at the expense of Plaintiff. As will be discussed, it is clear from Supreme Court precedent that the Union's exercise of its discretion is proper within the scheme established by Congress in the LMRA.

The bad faith inquiry focuses on the motive of the union: "In order to state a claim for breach of [the duty of fair representation], it is essential that plaintiffs allege a bad faith motive on the part of the union." Medlin v. Boeing Vertol Co., 620 F.2d 957, 961 (3d Cir. 1980). See also Truhlar v. United States Postal Serv., 600 F.3d 888, 893 (7th Cir. 2010) ("To show bad faith

Truhlar must point to subjective evidence showing that Smith's decisions stemmed from an improper motive"). Defendants move for summary judgment on the ground that Plaintiff cannot show that the Union acted in bad faith. The summary judgment burden then shifts to Plaintiff to point to evidence sufficient to persuade a reasonable jury to find in his favor.

In opposition, Plaintiff points to several pieces of evidence: 1) on two occasions in 2007 and 2008, shop steward Morgan raised his voice to Plaintiff and told him to "stop making waves"; 2) in 2009, Morgan told Plaintiff that there was nothing he could do about a particular disciplinary action Plaintiff received; 3) in 2010, Morgan did not defend Plaintiff at a meeting and afterward told Plaintiff that he had "screwed" himself; and 4) Morgan organized the opposition to the Driscoll Settlement and played a key role in recruiting Union members to sign the petition against the settlement. The problem with this evidence is that Plaintiff has offered no evidence to link Morgan's animus to the decision of the Executive Board to reject the Driscoll Settlement. There is absolutely no evidence of record that suggests that the two Executive Board decisions at issue (the decision to reject the Driscoll Settlement, and the decision not to enforce the arbitration award) were based on any improper motive. There is no evidence that, even if Morgan bore personal animus toward Plaintiff, that animus had any effect on the Board's decisions. At most, Plaintiff has evidence that Morgan played an important role in organizing the opposition of Union members to the Driscoll Settlement. Yet the record shows only that the Union members opposed the Driscoll Settlement because of the economic impact of the terms of that settlement on them, as well as policy concerns related to the settlement. There is simply no evidence that any Union member or Executive Board member opposed the Driscoll Settlement for anything but legitimate concerns about policy and the economic impact of the settlement on

the members of the bargaining unit. There is certainly no evidence of improper or hostile motive, or bad faith, on the part of the Executive Board in making the decisions Plaintiff complains of.

Similarly, Defendants move for summary judgment on the fair representation claim on the ground that Plaintiff cannot show that the Union's conduct was arbitrary. In opposition, Plaintiff offers arguments which attempt to demonstrate that the Union's reasons for its decisions are not credible. This must fail for several reasons. The most obvious one is that the Executive Board had a rational basis for rejecting the settlement: even Plaintiff admits that almost half the Union members signed a petition opposing it because it proposed eliminating two positions from the bargaining unit. (Pl.'s Opp. Br. 20.) The record most strongly supports the inference that the rationale for the Executive Board's decision was that a substantial group of members opposed the Driscoll Settlement due to legitimate economic and policy concerns.

The relevant law affords collective bargaining units wide discretion and courts very limited power to intervene to resolve labor disputes. At the outset, this Court notes that, under Supreme Court precedent, its review of the Union's decisions is highly deferential:

> Congress did not intend judicial review of a union's performance to permit the court to substitute its own view of the proper bargain for that reached by the union. Rather, Congress envisioned the relationship between the courts and labor unions as similar to that between the courts and the legislature. Any substantive examination of a union's performance, therefore, must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities.

Air Line Pilots Ass'n v. O'Neill, 499 U.S. 65, 78 (1991). Moreover, "courts play an extremely limited role in resolving labor disagreements." Service Employees Int'l Union Local 36 v. City Cleaning Co., 982 F.2d 89, 91 (3d Cir. 1992).

The Supreme Court has made clear that, to succeed on the arbitrary prong, a plaintiff

must show that the conduct complained of was wholly irrational:

> [U]nder the "arbitrary" prong, a union's actions breach the duty of fair representation "only if [the union's conduct] can be fairly characterized as so far outside a 'wide range of reasonableness' that it is wholly 'irrational' or 'arbitrary.'" 499 U.S. at 78 (quoting *Ford Motor Co. v. Huffman*, *supra*, at 338). This "wide range of reasonableness" gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong. In *Air Line Pilots*, for example, the union had negotiated a settlement agreement with the employer, which in retrospect proved to be a bad deal for the employees. The fact that the union had not negotiated the best agreement for its workers, however, was insufficient to support a holding that the union's conduct was arbitrary. 499 U.S. at 78-81. A union's conduct can be classified as arbitrary only when it is irrational, when it is without a rational basis or explanation.

Marquez v. Screen Actors Guild, 525 U.S. 33, 45-46 (1998). Plaintiff has failed to present evidence from which a reasonable jury could conclude that the Executive Board's decisions were wholly irrational, without any rational basis. As noted, the undisputed evidence is that almost half the Union membership opposed the settlement based on legitimate economic and policy concerns, the Executive Board knew of this, and this fact played a role in motivating their decisions. Plaintiff has failed to point to evidence showing that the decisions were wholly irrational.

In Vaca v. Sipes, 386 U.S. 171, 177 (1967), the Supreme Court stated the fundamental definition of the duty of fair representation:

> The statutory duty of fair representation was developed over 20 years ago in a series of cases involving alleged racial discrimination by unions certified as exclusive bargaining representatives under the Railway Labor Act, and was soon extended to unions certified under the N. L. R. A. Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.

At the outset, it should be noted that the Supreme Court defined the duty of fair representation as

11

a duty to represent <u>all</u> members of the union. It is not a duty to a member as an individual.[5] The Court emphasized this later in the decision: "The collective bargaining system as encouraged by Congress and administered by the NLRB of necessity subordinates the interests of an individual employee to the collective interests of all employees in a bargaining unit." <u>Id.</u> at 182.

In <u>Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry</u>, 494 U.S. 558, 567-568 (1990), the Supreme Court discussed analogies that might illuminate the nature of the duty of fair representation, and pointed to the relationship between the trustee and the beneficiaries of a trust:

> Just as a trustee must act in the best interests of the beneficiaries, a union, as the exclusive representative of the workers, must exercise its power to act on behalf of the employees in good faith, *Vaca v. Sipes*, 386 U.S., at 177. Moreover, just as a beneficiary does not directly control the actions of a trustee, an individual employee lacks direct control over a union's actions taken on his behalf.
>
> The trust analogy extends to a union's handling of grievances. In most cases, a trustee has the exclusive authority to sue third parties who injure the beneficiaries' interest in the trust, including any legal claim the trustee holds in trust for the beneficiaries, Restatement (Second) of Trusts, *supra*, § 82, comment a. The trustee then has the sole responsibility for determining whether to settle, arbitrate, or otherwise dispose of the claim. Restatement (Second) of Trusts, *supra*, § 192. Similarly, the union typically has broad discretion in its decision whether and how to pursue an employee's grievance against an employer.

Again, this underscores the principle that the union, like a trustee, is bound to act in the best interests of all members, like the beneficiaries of a trust. In addition, the union, like a trustee, has broad discretion over "whether and how to pursue an employee's grievance." The Supreme Court cited § 192 of the Restatement (Second) of Trusts, which states: "The trustee can properly compromise, submit to arbitration or abandon claims affecting the trust property, provided that in

---

[5] Rather, a union, as a collective bargaining representative, must "make an honest effort to serve the interests of all of those members, without hostility to any." <u>Huffman</u>, 345 U.S. at 337. There is no evidence that the Union was motivated in its decisions by any hostility toward Plaintiff.

so doing he exercises reasonable prudence." The Restatement comments add that, in making this decision, the trustee must "act[] within the bounds of a reasonable judgment." Restatement (Second) of Trusts § 192 comment a. Furthermore, in this regard, there is "[a] wide range of reasonableness." Huffman, 345 U.S. at 338.

It is clear in this case that the decisions of the Union that Plaintiff complains of were decisions that the Union made in a good faith effort to serve the collective interests of the membership, and that there is no evidence that, considered in that context, the Union acted outside the bounds of reasonable judgment. In arriving at its decision on Plaintiff's grievance, the Union needed to consider Plaintiff's interests as well as those of the other Union members. Again, the Supreme Court has stated that the Union has broad discretion in such negotiations:

> Any authority to negotiate derives its principal strength from a delegation to the negotiators of a discretion to make such concessions and accept such advantages as, in the light of all relevant considerations, they believe will best serve the interests of the parties represented. . . . The bargaining representative, whoever it may be, is responsible to, and owes complete loyalty to, the interests of all whom it represents. . . . Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.

Id. This quote expresses well the reasons that this Court will not disturb the Union's decisions about Plaintiff's grievance. No one has even suggested that the Union's decision did not evidence loyalty to the collective interests of the membership. There is no evidence that the Union decided to reject the settlement for bad faith or dishonest reasons. To the contrary, it is obvious in this case that the Union decided to subordinate Plaintiff's individual interests to the

13

collective interests of the membership. The Supreme Court has made clear that, in cases like this one, where the Union has made a good faith decision which benefits the group rather than the individual, the federal courts will not intervene.

As already established, the law affords labor unions broad discretion to decide how to weigh the competing interests of their members. It is therefore inevitable that labor unions will make decisions that are better for some members and worse for others:

> [W]e are not ready to find a breach of the collective bargaining agent's duty of fair representation in taking a good faith position contrary to that of some individuals whom it represents nor in supporting the position of one group of employees against that of another. . . Conflict between employees represented by the same union is a recurring fact.

Humphrey v. Moore, 375 U.S. 335, 349-50 (1964). The undisputed evidence shows that the Union made a decision in good faith which supported the position of almost half the members of the Union. The petition which opposed the settlement criticized the settlement for eliminating two positions from the bargaining unit. The Executive Board evidently found this to be a valid consideration and decided to reject the settlement. In so doing, it favored the interests of the larger group over the interests of Plaintiff. This Court has no basis to conclude that this decision fell so far outside a wide range of reasonableness that it is wholly irrational or arbitrary. To the contrary, the decision not to proceed with an agreement that eliminated two positions from the bargaining unit, and which was strongly opposed by nearly half the Union membership, appears not arbitrary but rational. The Union did not breach its duty of fair representation.

Plaintiff has failed to defeat Defendants' motions for summary judgment as to the Second Count. As to Plaintiff's claim for violation of the duty of fair representation, Defendants' motions for summary judgment will be granted.

Lastly, Defendants move for summary judgment as to the Fifth Count, which seeks to confirm the arbitration award, on the ground that Plaintiff lacks standing to pursue this claim. In opposition, Plaintiff concedes that the general rule is that employees lack standing to confirm an arbitration award because they are not a party to the collective bargaining agreement, but cites Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 131 (4th Cir. 2002), for the proposition that there is an exception to this rule for cases in which a union has breached its duty of fair representation. Because this Court has ruled against Plaintiff on his claim for breach of the duty of fair representation, he cannot prevail on the Fifth Count. As to Plaintiff's claim which seeks to enforce the arbitration award, Defendants' motion for summary judgment will be granted.

The parties had previously stipulated to the dismissal of the Fourth Count of the Amended Complaint. This Court has now ruled in Defendants' favor on all of the remaining claims. This moots Plaintiff's motion for summary judgment.

## **CONCLUSION**

Defendants have demonstrated that "there is no genuine dispute as to any material fact and the movant[s] [are] entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Defendants' motions for summary judgment are granted in their entirety, and judgment is entered in favor of Defendants on all counts in the Amended Complaint. Plaintiff's motion for summary judgment is denied as moot.

                                                 s/ Stanley R. Chesler
                                                 STANLEY R. CHESLER, U.S.D.J.

Dated: January 14, 2013